# ORIGINAL

1  DENISE M. MINGRONE (STATE BAR NO. 135224)
   dmingrone@orrick.com
2  SIDDHARTHA VENKATESAN (STATE BAR NO. 245008)
   svenkatesan@orrick.com
3  ELIZABETH C. McBRIDE (STATE BAR NO. 260577)
   emcbride@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, California 94025
   Telephone:   +1-650-614-7400
6  Facsimile:    +1-650-614-7401

7  Attorneys for Plaintiff
   SYNOPSYS, INC.

ADR

RECEIVED

OCT 16 2012

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

E-filing

11

12  SYNOPSYS, INC., a Delaware corporation,        Case No. CV12-05334

13                      Plaintiff,                 **COMPLAINT FOR COPYRIGHT
                                                   INFRINGEMENT, TRADE SECRET**
14       v.                                        **MISAPPROPRIATION, COMPUTER
                                                   FRAUD AND ABUSE (18 U.S.C. §§ 1030**
15  DEEPAK SABHARWAL, an individual,               **et seq. & CAL. PENAL CODE §502(C) et
                                                   seq.), BREACH OF CONTRACT, AND**
16                      Defendant.                 **UNFAIR COMPETITION (CAL. BUS. &
                                                   PROF. CODE §§ 1030 et seq.)**
17

18                                                 **DEMAND FOR JURY TRIAL**

19                                                 Date:
                                                   Time:
20                                                 Dept:
                                                   Judge:
21

22

23

24                    DOCUMENT SUBMITTED UNDER SEAL

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. ____

**ORIGINAL**

1   DENISE M. MINGRONE (STATE BAR NO. 135224)
    dmingrone@orrick.com
2   SIDDHARTHA VENKATESAN (STATE BAR NO. 245008)
    svenkatesan@orrick.com
3   ELIZABETH C. McBRIDE (STATE BAR NO. 260577)
    emcbride@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, California  94025
    Telephone:    +1-650-614-7400
6   Facsimile:    +1-650-614-7401

7   Attorneys for Plaintiff
    SYNOPSYS, INC.
8

9                      UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11

12   SYNOPSYS, INC., a Delaware corporation,        Case No.

13                Plaintiff,                         **COMPLAINT FOR COPYRIGHT
                                                     INFRINGEMENT, TRADE SECRET
14          v.                                       MISAPPROPRIATION, COMPUTER
                                                     FRAUD AND ABUSE (18 U.S.C. §§ 1030
15   DEEPAK SABHARWAL, an individual,                et seq. & CAL. PENAL CODE §502(C) et
                                                     seq.), BREACH OF CONTRACT, AND
16                Defendant.                          UNFAIR COMPETITION (CAL. BUS. &
                                                     PROF. CODE §§ 1030 et seq.)**
17

18                                                   **DEMAND FOR JURY TRIAL**

19                                                   Date:
                                                     Time:
20                                                   Dept:
                                                     Judge:
21

22

23

24                    ~~DOCUMENT SUBMITTED UNDER SEAL~~

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. ____

Plaintiff SYNOPSYS, INC. ("Synopsys") alleges as follows:

1. Synopsys brings this action against defendant Deepak Sabharwal ("Sabharwal") a former Synopsys employee, for federal computer fraud, copyright infringement, trade secret misappropriation, breach of contract, state computer fraud, and unfair competition related to Sabharwal's theft of valuable Synopsys intellectual property prior to his departure to a competitor.  Synopsys brings this action for injunctive relief and damages to immediately enjoin further copying, access to or disclosure of Synopsys' valuable proprietary information by Sabharwal.

## PARTIES

2. Synopsys is a Delaware corporation with its principal place of business located at 700 East Middlefield Road, Mountain View, California  94043.

3. Deepak Sabharwal is an individual with his primary residence located at 42701 Loma Drive, Fremont, California  94539.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to, *inter alia*, 28 U.S.C. §§ 1331, 1338 and 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the events and omissions giving rise to the claims occurred here and the Defendant resides in this district and is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

6. Synopsys is a leader in electronic design automation ("EDA") and semiconductor intellectual property.  Synopsys delivers products and services to every major semiconductor design and electronics company to help those companies design, test and manufacture integrated circuits used in a wide variety of electronic devices.  For more than 25 years, Synopsys has specialized in the development of an industry-leading and comprehensive suite of system-level implementation, verification, manufacturing, optical and field-programmable gate array ("FPGA") solutions to help address the key challenges designers face such as power and yield management, system-to-silicon verification and time-to-results.  Synopsys has received numerous

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 1 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1   industry awards and over 1,300 United States patents for its innovative technologies.

2        7.      Synopsys is incorporated in Delaware and headquartered in Mountain View,

3   California. Synopsys also maintains offices throughout the country and the world.

4        8.      Synopsys acquired Virage Logic Corporation ("Virage") on September 3, 2010.

5   Sabharwal is a former employee of Virage and became a Synopsys employee as a result of the

6   acquisition. Sabharwal joined Virage as a Design Engineer on January 5, 1998. He received

7   several promotions throughout his career, including Project Leader, Director of Design

8   Engineering, and Senior Director of Memory Development. His position, roles and

9   responsibilities as Senior Director in the Embedded Memories and Logic Libraries Group

10  remained the same at Synopsys after the acquisition of Virage in September 2010.

11       9.      In consideration for his employment and as a precondition to obtain access to

12  Synopsys confidential information, Sabharwal signed an employment agreement ("Agreement")

13  attached as Exhibit A in which he promised, among other things, that:

> At all times, both during my employment by the Company and after its
> termination, ***I will keep in confidence and trust all Proprietary
> Information or confidential information belonging to a third party
> entrusted to the Company***, and I will not use or disclosure such
> Proprietary information or third-party confidential information or anything
> relating to it without the written consent of the Company, except as may
> be necessary in the ordinary course of performing my duties in good faith
> for the Company in furtherance of the Company's business and in
> accordance with Company policies. [emphasis added]

20       10.     The Agreement defines "<u>Proprietary Information</u>" in Paragraph 1 as:

> [I]information that has been created, discovered, developed or otherwise
> become known to the Company (including, without limitation, information
> created, discovered or developed by, or made known to, me during the
> period of or arising out of my employment by the Company) and/or in
> which property rights have been assigned, licensed or otherwise conveyed
> to the Company, which information has commercial value in the business
> sin which the Company is engaged in part based on it being kept
> confidential.

11       11.     Moreover, Paragraph 3(B) of the Agreement is entitled <u>Ownership; Return of</u>

<u>Property</u> and provided that Sabharwal was under an obligation to return all property, including

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 2 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. ____

intellectual property when his employment terminated:

> All documents, records, apparatus, equipment and other physical property, whether or not pertaining to Proprietary Information, as well as intangible property, furnished to me by the Company or produced by me or others in connection with my employment shall be and remain the sole property of the Company and shall be returned to the Company immediately as and when requested by the Company. Even if the Company does not so request, I shall return and deliver all such property upon termination of my employment by me or the Company for any reason and I will not take with me any such property or any reproduction of such property upon such termination.

12.     During his tenure at Virage and Synopsys, Sabharwal had access to highly confidential and valuable Proprietary Information, including, for example, proprietary chip designs, development roadmaps and company project resource allocation plans.

13.     Sabharwal also had access to third party Proprietary Information through his role at Synopsys.  For example, Sabharwal had a significant engineering role in an ongoing project between Synopsys and Intel related to the electronic design and automation of Intel chip processors.  In the course of this project, Sabharwal had access both to Synopsys Proprietary Information as well as Intel confidential information.

14.     Upon information and belief, as early as April 7, 2012, Sabharwal began using his Synopsys-issued laptop to communicate with ARM Limited ("ARM"), a Synopsys competitor in the libraries and memories area.  Sabharwal was employed by Synopsys at the time of this initial contact with ARM and, upon information and belief, continued to be in contact with ARM during the course of his employment with Synopsys following this contact.  On information and belief, while employed by Synopsys, and using his Synopsys laptop, Sabharwal created a presentation in May 2012 for ARM that outlined a technology and business strategy for ARM's future success.  And while creating this presentation on his Synopsys laptop, on information and belief Sabharwal was contemporaneously accessing and viewing Synopsys confidential documents and files.

15.     On information and belief, Sabharwal accepted his employment offer from ARM on July 18, 2012 by signing the employment offer.  Sabharwal did not disclose this to Synopsys

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 3 -

COMPLAINT AND DEMAND FOR JURY TRIAL.
CASE NO. _____

1    at the time, or at any time until August 27, 2012.

2        16.    On August 16, 2012, five months after his initial contact with ARM, Sabharwal

3    notified Synopsys that he was resigning. Sabharwal did not disclose to Synopsys that he had

4    already accepted another job, and concealed the fact that, upon information and belief, he had

5    already signed an employment agreement with ARM for a Vice President of Engineering position

6    in the Embedded Memories Group of the Physical IP division of ARM, which directly competes

7    with Synopsys.

8        17.    After receiving Sabharwal's resignation, on August 20, 2012 a supervisor of

9    Sabharwal, Raymond Leung, visited Sabharwal and urged him to consider staying at Synopsys.

10   During this conversation and in response to direct questions from Mr. Leung, Sabharwal revealed

11   for the first time that he was planning to join a competitor. Sabharwal only confirmed that the

12   competitor was ARM a week later, on August 27, 2012, and only after Mr. Leung pointedly asked

13   him if he was going to join ARM.

14       18.    Upon learning that Sabharwal would be departing for a competitor, Mr. Leung

15   directed Sabharwal to immediately stop his work at Synopsys and return all Synopsys property,

16   including his identification badge, blackberry devices, and laptop. Sabharwal was notified that he

17   was being placed on leave effective immediately and was to cease work on all Synopsys-related

18   business. He was further notified that he would no longer have access to Synopsys facilities after

19   he returned his badge.

20       19.    Sabharwal returned his badge that same day, August 20, 2012, but asked Mr.

21   Leung to keep his Synopsys laptop for the sole personal purpose of retrieving personal

22   information from it. Mr. Leung authorized only this restricted use and instructed Sabharwal to

23   promptly return the laptop thereafter, and Sabharwal agreed.

24       20.    Mr. Leung never authorized Sabharwal to access, copy or obtain any Synopsys

25   data or materials from his Synopsys laptop after August 20, 2012, when Sabharwal was placed on

26   leave. And Sabharwal never sought such authorization. Nor did Mr. Leung or the Embedded

27   Memories group at Synopsys ever authorize the use of external storage devices, such as USB

28   devices, thumb drives, or DVDs in connection with Sabharwal's use of his Synopsys-issued

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 4 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1  computer or any of his work-related duties.

2      21.     The next day, on August 21, 2012 Synopsys issued an emergency termination of

3  all access to Synopsys physical facilities and information technology assets, notifying the Global

4  Security and Information Technology Security divisions. Within minutes, Sabharwal's access to

5  all facilities, computer systems, computer networks, mail servers, UNIX, and remote VPN was

6  deactivated and terminated. Sabharwal was also placed on leave.

7      22.     Late at night on August 23, 2012, Sabharwal without any authorization secretly

8  copied and transferred at least *7,000* files and *10,000* emails from his Synopsys computer to a

9  personal external hard drive. Of course at this time, this was the only remaining access that

10 Sabharwal had to Synopsys data, despite that he was explicitly not authorized to access it.

11 Sabharwal appears to have copied his entire Synopsys "work profile," i.e. the entirety of the data

12 image from his Synopsys laptop on August 23. In total, upon information and belief Sabharwal

13 copied at least 30 GB of data from his Synopsys computer without any authorization from his

14 supervisor for approximately *three hours*. Many of the documents Synopsys has examined thus

15 far in its investigation show that the documents were facially designated as Synopsys or Virage

16 confidential. Numerous of these documents also bear copyright designations.

17      23. In addition, Sabharwal copied files including numerous documents facially

18 designated as Intel confidential information and Intel "top secret." Thus, upon information and

19 belief, Sabharwal copied not only Synopsys Proprietary Information, but also Intel Proprietary

20 Information.

21      24. During this same time, Synopsys had made repeated requests to Sabharwal to

22 return the Synopsys laptop still in his possession—but Sabharwal refused. As a result, on August

23 31, 2012 at 3 p.m. a Synopsys employee called Sabharwal and notified him that Synopsys would

24 be coming to his home later that day to retrieve the laptops. The Synopsys employee arrived at

25 around 4:30 p.m. to collect the laptops. Synopsys later learned upon a forensic examination of

26 these laptops that Sabharwal had begun deleting a significant volume of files and emptying the

27 recycle bin from the Synopsys laptop at 4 p.m. this same day, and concluded at 4:31 p.m. On

28 information and belief, Sabharwal also copied his entire Outlook contacts from his Synopsys

- 5 -

1   computer to the same external storage drive that same afternoon, knowing that Synopsys was

2   coming to physically retrieve the laptops that he had refused to return.

3   25.   During his September 17, 2012 exit interview, Sabharwal repeatedly lied about

4   ever using external storage devices in connection with his employment at Synopsys, and denied

5   copying any files from his Synopsys laptop to an external hard drive or performing any recent

6   back-ups. He did not return any external storage devices or other Synopsys materials, but instead

7   he repeatedly lied. He misrepresented that he had returned all Synopsys information and

8   materials in his possession and that he retained no information or documents, external storage

9   devices or USB devices with information or materials acquired from Synopsys. And, therefore,

10   on information and belief, he retains those devices and information to this day.

11   26.   As a result of Sabharwal's actions, Synopsys has incurred, and will continue to

12   incur, substantial damages and losses. The thousands of internal documents and files Sabharwal

13   copied contain valuable, confidential, and proprietary information. Additionally, Synopsys has

14   incurred substantial costs and losses responding to and investigating Sabharwal's theft and

15   unauthorized transfer of data from his Synopsys laptop.

16   27.   Synopsys has invested a large amount of resources into developing and protecting

17   the information stolen by Sabharwal. Years of research and development investment including

18   millions of dollars and teams of dedicated engineering and managerial personnel underlie the

19   technology created by the Embedded Memories and Logic Libraries Group at Synopsys. This

20   investment additionally includes Synopsys customer and joint-venture partnerships with

21   significant, cutting edge industry leaders such as Intel Corporation. Synopsys has similarly

22   invested millions of dollars and dedicated personnel, physical resources and time to develop its

23   relationship with Intel so that together both companies can create new and advanced technology

24   especially in the 22 and 14 nanometer embedded memory arenas.

25   28.   Many if not most of the files stolen by Sabharwal contain and address the

26   Synopsys-Intel research and development joint projects. This confidential information includes

27   not only both Synopsys and Intel internally-proprietary information but also encompasses

28   Synopsys' solution to problems encountered regarding the 22 and 14 nanometer embedded

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 6 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1   projects with Intel. Disclosure of these confidential files would undermine the competitive

2   advantages Synopsys has earned from these substantial monetary and personnel investments and

3   cause irreparable harm to Synopsys.

4       29.    In addition, many of the stolen files also include documents and drawings authored

5   by Synopsys engineers that are written by Synopsys engineers in the course of their duties at

6   Synopsys and contain creative expression in their content. Many of these documents and

7   drawings relate to Synopsys products, which themselves reflect a series of engineering and design

8   choices made over time by Synopsys engineers.

9       30.    The irreparable injury to Synopsys is further compounded by the fact that

10   Sabharwal has taken a senior engineering position with ARM. ARM, which offers EDA-related

11   libraries and memories that compete with Synopsys as well as integrated circuits that compete

12   with Intel, maintains a vertical position in the semiconductor design and manufacturing industry.

13   Sabharwal's departure to ARM threatens the disclosure of commercially valuable Synopsys

14   Proprietary Information and Intel confidential information to a competitor of both companies.

## FIRST CLAIM FOR RELIEF

(Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030 *et seq.*)

17       31.    Each of the above paragraphs is herein incorporated by reference.

18       32.    Upon information and belief, Sabharwal intentionally accessed a computer without

19   authorization or exceeded authorized access, and thereby obtained information from the protected

20   computer.

21       33.    Upon information and belief, Sabharwal knowingly and with intent to defraud,

22   accessed a protected computer without authorization, or exceeded authorized access, and by

23   means of such conduct, furthered the intended fraud and obtained a thing of value.

24       34.    Upon information and belief, Sabharwal knowingly caused the transmission of a

25   program, information, code, or command, and as a result of such conduct, intentionally caused

26   damage without authorization, to a protected computer.

27       35.    Upon information and belief Sabharwal intentionally accessed a protected

28   computer without authorization, and as a result of such conduct, caused damage and loss.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 7 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1    36.    Sabharwal's conduct caused a loss to Synopsys during a one-year period

2    aggregating at least $5,000 in value. For example, Sabharwal copied, transmitted, and deleted

3    valuable Synopsys Proprietary Information, causing at least $5,000 in damages to Synopsys.

4    Additionally, Sabharwal has caused at least $5,000 of damages to Synopsys, which has incurred

5    substantial costs and expenses related to its investigation and response to the theft, including

6    forensically analyzing the laptop from which Sabharwal copied and deleted files, and conducting

7    a damage assessment.

8    37.    Accordingly, Sabharwal has violated 18 U.S.C. § 1030(g).

9    38.    As a result of Sabharwal's unauthorized access, Synopsys has suffered and will

10   continue to suffer irreparable harm.

11   **SECOND CLAIM FOR RELIEF**

(Copyright Infringement, 17 U.S.C. §§ 502, *et seq.*)

12

13   39.    Each of the above paragraphs is herein incorporated by reference.

14   40.    The Synopsys Proprietary Information copied by Sabharwal includes Synopsys

15   design sheets, manuals and other documents reflecting engineering designs that are copyrightable

16   subject matter under 17 U.S.C. §101. Synopsys holds a copyright registration in at least one of

17   these works (Registration Number TXu 1-824-741). Synopsys has submitted additional works

18   for expedited registration and expects the Certificates of Registrations to issue shortly.

19   41.    At all relevant times, Synopsys has been and is the legal owner of the exclusive

20   rights under the Copyright Act to reproduce, distribute, and prepare derivative works of the

21   Copyrighted Works.

22   42.    On information and belief, Sabharwal has made one or more copies of the

23   Copyrighted Works in the United States without authorization from Synopsys and/or distributed

24   one or more copies of the Copyrighted Works without Synopsys' authorization.

25   43.    Upon information and belief, Sabharwal committed all acts willfully and with

26   malice. As a result of Sabharwal's unauthorized copying, Synopsys has been damaged in an

27   amount to be determined.

28   44.    As a result of Sabharwal's copyright infringement, Synopsys has suffered and will

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 8 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1    continue to suffer irreparable harm.

2    **THIRD CLAIM FOR RELIEF**

3    (Trade Secret Misappropriation, Cal. Civ. Code §§ 3426 *et seq.*)

4    45.    Each of the above paragraphs is herein incorporated by reference.

5    46.    Synopsys has enjoyed, and continues to enjoy, an advantage over its existing and

6    prospective competitors in the design, development, production, service, marketing, and sale of

7    products and services because many of its designs and source code are trade secrets.

8    47.    Synopsys has made reasonable efforts under the circumstances to preserve the

9    confidentiality of these trade secrets.  Such information derives independent economic value from

10   not being generally known to the public or to other persons who can obtain economic value from

11   their disclosure or use.

12   48.    Sabharwal utilized improper means in acquiring these trade secrets by copying and

13   transferring these trade secrets from the Synopsys laptop, by, among other things, copying the

14   files without authorization, making misrepresentations of material fact to obtain continued access

15   to the laptop, deleting Synopsys files after copying, and repeatedly denying any misappropriation

16   during his exit interview.

17   49.    Synopsys has been damaged by Sabharwal's trade secret misappropriation.  Upon

18   information and belief, Sabharwal acted willfully and maliciously, entitling Synopsys to

19   exemplary damages pursuant to California Civil Code § 3426.3(c).

20   50.    Synopsys has also has suffered irreparable harm as a result of Sabharwal's theft

21   and will continue to suffer irreparable injury that cannot be adequately remedied at law.

22   **FOURTH CLAIM FOR RELIEF**

23   (Breach of Contract)

24   51.    Each of the above paragraphs is herein incorporated by reference.

25   52.    At all times during his employment at Synopsys, Sabharwal was under the

26   obligations of his signed employment agreement ("Agreement").

27   53.    Sabharwal continues to owe a contractual duty to Synopsys not to disclose, use or

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1 | retain Synopsys Proprietary Information or third party confidential information without express

2 | written authorization.

3 |     54.    Sabharwal continues to owe a contractual duty to Synopsys to return all Synopsys

4 | Proprietary Information and third party confidential information obtained through employment

5 | following his departure.

6 |     55.    Sabharwal breached the Agreement by *inter alia*, copying Synopsys Proprietary

7 | Information and failing to return Synopsys Proprietary Information.

8 |     56.    Sabharwal breached the Agreement by *inter alia*, copying third party confidential

9 | information obtained through the course of his employment at Synopsys, including at least Intel

10 | confidential information, and failing to return the third party confidential information.

11 |     57.    Synopsys has performed all of its duties under the contracts.

12 |     58.    As a result of these breaches, Synopsys has suffered damages.  Additionally,

13 | Synopsys has suffered and will continue to suffer irreparable harm caused by these breaches.

14 | **FIFTH CLAIM FOR RELIEF**
(Cal. Penal Code § 502(c))

15 |

16 |     59.    Each of the above paragraphs is herein incorporated by reference.

17 |     60.    At all relevant times, Sabharwal acted knowingly.

18 |     61.    Through the conduct alleged herein, Sabharwal knowingly accessed and without

19 | permission altered, damaged, deleted, destroyed, or otherwise used data, a computer, a computer

20 | system, or a computer network in order to either (A) devise or execute a scheme or artifice to

21 | defraud, deceive, or extort, or (B) wrongfully control or obtain Synopsys money, property, or

22 | data.

23 |     62.    Through the conduct alleged herein, Sabharwal knowingly accessed and without

24 | permission took, copied, or made use of any data from a computer, computer system, or computer

25 | network, or took or copied any supporting documentation, whether existing or residing internal or

26 | external to a computer, computer system, or computer network.

27 |     63.    Through the conduct alleged herein, Sabharwal knowingly accessed and without

28 | permission added, altered, damaged, deleted or destroyed data, computer software, or computer

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 10 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1   programs which reside or exist internal or external to a computer, computer system, or computer

2   network.

3         64.     Through the conduct alleged herein, Sabharwal knowingly and without permission

4   accessed or caused to be accessed any computer, computer system, or computer network.

5         65.     Accordingly, Sabharwal has violated at least Cal. Penal Code § 502(c), subsections

6   (1), (2), (4), and (7).

7   **SIXTH CLAIM FOR RELIEF**

8   (Cal. Bus. and Prof. Code §§ 17200 *et seq.*)

9         66.     Each of the above paragraphs is herein incorporated by reference.

10        67.     Sabharwal committed an unlawful, unfair, and fraudulent business act or practice.

11  In particular, Sabharwal misrepresented to Synopsys that he wished to extract "personal

12  information" in order to retain access to his Synopsys laptop and copying Synopsys Proprietary

13  Information and third party confidential information and subsequently deleting the information

14  and denying he had performed any copying or deletion.

15        68.     Sabharwal also committed an unlawful, unfair, and fraudulent business act or

16  practice by working on a presentation for ARM using Synopsys property during the course of his

17  employment at Synopsys.

18        69.     Sabharwal's actions have damaged Synopsys. Accordingly, Synopsys is entitled

19  to restitution and the return of any ideas, concepts, and inventions that should have been disclosed

20  and assigned to them.

21        70.     As a result of Sabharwal's unauthorized access, Synopsys has suffered and will

22  continue to suffer irreparable harm. Synopsys is also entitled to an injunction pursuant to

23  Business & Professions Code § 17203 to prevent the on-going acts described above.

24

25  **PRAYER FOR RELIEF**

26  WHEREFORE, Plaintiff prays for judgment as follows:

27  1.     For entry of judgment against the Defendant on all Claims for Relief;

28  2.     For an injunction preliminarily and permanently prohibiting the Defendant from

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 11 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

1    directly or indirectly:

2              b.     Reproducing, distributing, publishing, placing in the market, or otherwise

3    infringing Synopsys' copyrighted works, in whole or in part, or any derivative work

4    thereof, in any medium;

5              c.     Acquiring, using, possessing, disclosing, conveying, or communicating to

6    any person any of Synopsys' trade secret or any other Proprietary Information or

7    confidential information of any third party, including Intel, that Sabharwal received access

8    to in the course of his duties at Synopsys;

9              d.     Manufacturing, producing, offering for sale, selling, or conveying to any

10   person any products, systems or services produced, manufactured, or marketed using

11   Synopsys' trade secrets or any other Proprietary Information or confidential information

12   of any third party, including Intel, that Sabharwal received access to in the course of his

13   duties at Synopsys;

14             e.     Inducing any current or former Synopsys employee to breach any contract,

15   unfairly promoting ARM technology using Synopsys proprietary marketing information,

16   or disrupting any actual or prospective Synopsys business relationship;

17       3.    For an injunction preliminarily and permanently requiring the Defendant to return

18   to Synopsys all copies of Synopsys' trade secrets in his possession, custody, and control, as well

19   as Synopsys' copyrighted materials, Synopsys Proprietary Information and third party

20   confidential information as well as all electronic storage devices that ever contained any of this

21   information, and to fully disclose, under penalty of perjury, the names and whereabouts of all

22   persons to whom, and all entities to which, such information has been further distributed by him;

23       4.    For an order, pursuant to 17 U.S.C. § 503(a) and (b), and other applicable statutes

24   or laws, providing for the impoundment, destruction, or other reasonable disposition of all

25   complete or partial copies of the Synopsys copyrighted works in the possession or control of the

26   Defendant, and a complete disclosure of the location of any such copies, including any distributed

27   by Defendant;

28       5.    For compensatory damages in an amount according to proof;

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY                                   - 12 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

6.    For actual damages suffered as a result of the copyright infringement and any of Defendant's profits that are attributable to the infringement, or at least statutory damages;

7.    For an award of treble damages for all claims for which treble damages are authorized, and otherwise for the maximum enhancement allowed by law;

8.    For an award of punitive damages;

9.    For an award reflecting the amount by which the Defendant have been unjustly enriched;

10.    For an accounting;

11.    For costs of suit and reasonable attorneys' fees incurred herein;

12.    For prejudgment and post judgment interest; and

13.    For such other relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiff demands a trial by jury as to all issues so triable.

Dated: October 16, 2012

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____
DENISE M. MINGRONE
Attorneys for Plaintiff
SYNOPSYS, INC.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

- 13 -

COMPLAINT AND DEMAND FOR JURY TRIAL
CASE NO. _____

## EMPLOYMENT AGREEMENT

The following confirms an agreement between me and Synopsys, Inc., on behalf of itself and its subsidiaries (hereinafter the "Company"), which is a material part of the consideration for and a condition of my employment by the Company (the "Agreement"). Hereinafter the Company or I may sometimes be referred to singularly as a "Party" or collectively as the "Parties."

1.    Proprietary Information.   I recognize that the Company is engaged in a continuous program of research, development and production respecting its business, present and future, including confidential fields generally related to its business, and that the Company possesses and continues to possess proprietary and/or confidential information that has been created, discovered, developed or otherwise become known to the Company (including, without limitation, information created, discovered or developed by, or made known to, me during the period of or arising out of my employment by the Company) and/or in which property rights have been assigned, licensed or otherwise conveyed to the Company, which information has commercial value in the business in which the Company is engaged in part based on it being kept confidential.  All of the aforementioned information is hereinafter called "Proprietary Information." By way of illustration, but not limitation, Proprietary Information includes trade secrets, algorithms, processes, data, know-how, computer software in both source and object form, interfaces, data structures, improvements, inventions, works of authorship, techniques, marketing plans, strategies, forecasts and customer lists.

2.    Relationship of Trust.   I understand that my employment creates a relationship of confidence and trust between me and the Company with respect to any confidential information:

   (i)   applicable to the business of the Company; or

   (ii)  applicable to the business of any client or customer of the Company, which may be made known to me by the Company or by any client or customer of the Company, or learned by me during the period of my employment.

3.    Covenants.   In consideration of my employment by the Company and the compensation received by me from the Company from time to time, I hereby agree as follows:

   A.  Ownership; Duty of Non-Disclosure.  All Proprietary Information shall be the sole property of the Company, and Synopsys, Inc. and/or its subsidiary, as the case may be, shall be sole owner of all patents, copyrights and other rights in connection therewith.  I hereby assign to Synopsys, Inc. any rights I may have or acquire in such Proprietary Information.  At all times, both during my employment by the Company and after its termination, I will keep in confidence and trust all Proprietary Information or confidential information belonging to a third party entrusted to the Company, and I will not use or disclose such Proprietary Information or third-party confidential information or anything relating to it without the written consent of the Company, except as may be necessary in the ordinary course of performing my duties in good faith for the Company in furtherance of the Company's business and in accordance with Company policies.

   B.  Ownership; Return of Property.  All documents, records, apparatus, equipment and other physical property, whether or not pertaining to Proprietary Information, as well as intangible property, furnished to me by the Company or produced by me or others in connection with my employment shall be and remain the sole property of the Company and shall be returned to the Company immediately as and when requested by the Company.  Even if the Company does not so request, I shall return and deliver all such property upon termination of my employment by me or the Company for any reason and I will not take with me any such property or any reproduction of such property upon such termination.

   C.  Disclosure of Inventions.  I will promptly disclose to the Company, or any persons designated by it, all inventions, works of authorship, processes, techniques, know-how, formulae, data, ideas, improvements and other information (including, without limitation, algorithms, interfaces, data structures or software, whether in source or object form) made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the term of my employment, whether or not in the course of my employment and whether or not patentable, copyrightable or protectable as trade secrets (collectively, the "Inventions").

Exhibit A

D.  Assignment of Rights and Interest. I acknowledge and agree that any copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. I agree that all Inventions that (i) are developed using equipment, supplies, facilities or trade secrets of the Company, (ii) result from work performed by me for the Company, or (iii) relate to the Company's business or actual or demonstrably anticipated research and development (the "Assigned Inventions"), will be the sole and exclusive property of the Company. I agree to assign, and do hereby assign, any and all rights I may have or acquire in the Assigned Inventions to the Company. In addition to the foregoing assignment of Assigned Inventions to the Company, I agree to assign, and do hereby irrevocably transfer and assign, to the Company: (i) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights, including but not limited to rights in databases, in any Assigned Inventions, along with any registrations of or applications to register such rights; and (ii) any and all "Moral Rights" (as defined below) that I may have in or with respect to any Assigned Inventions. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Assigned Inventions, even after termination of my work on behalf of the Company. "Moral Rights" mean any rights to claim authorship of or credit on an Assigned Inventions, to object to or prevent the modification or destruction of any Assigned Inventions, or to withdraw from circulation or control the publication or distribution of any Assigned Inventions, and any similar right, existing under judicial or statutory law of any country or subdivision thereof in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

E.  Labor Code Section 2870 Notice. I have been notified and understand that the provisions of Section D of this Agreement do not apply to any Assigned Invention that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR (2) RESULT FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER.  TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

If I am an employee whose principal work location is in Illinois, Kansas, Minnesota, or Washington state, the foregoing clause does not apply and is replaced by the relevant state law appearing in Appendix A attached to this Agreement. I hereby acknowledge having received and reviewed such notifications.

F.  Assistance. I agree to perform all acts deemed necessary or desirable by the Company to permit and assist it, at the Company's expense, in obtaining, maintaining and enforcing patents, copyrights, mask work rights, trade secret rights, and other legal protections with respect to the Assigned Inventions and/or other Inventions I may at any time assign to the Company in any and all countries. Such acts may include, but are not limited, to, execution of documents and assistance or cooperation in legal proceedings or to perfect title in the Company, its nominee or assigns. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agents and attorneys-in-fact to act for and on my behalf and instead of me, to execute and file any applications or related filings and to do all other lawfully permitted acts to further the prosecution, maintenance and enforcement, issuance of patents, copyrights, trade secret rights, rights with respect to mask works or other rights thereon with the same legal force and effect as if executed by me.

G. Prior Inventions. I have attached as Appendix B to this Agreement, a list describing all inventions, works of authorship, processes, services, concepts, techniques, know-how, formulae, data, ideas, improvements and other information (including, without limitation, algorithms, interfaces, data structures or software, whether in source or object form) made, conceived, or reduced to practice or learned by me, either alone or jointly with others, which belong to me, which relate in any way to the Company's proposed business, products or research and development, and which are not assigned to the Company (the "Prior Inventions"). If no such list is attached, I represent that no Prior Inventions exist. I further agree that, if I use in the scope of my employment, or incorporate in any product or service of the Company any Prior Inventions that I hereby grant the Company a nonexclusive, royalty-free, perpetual, irrevocable, assignable, worldwide license to make, have made, import, sell, modify and create works based on, use, copy, distribute, import, and perform or display such Prior Inventions for any purpose and to sublicense third parties with the same rights.

H. Efforts; Duty Not to Compete. I understand that my employment with the Company requires my undivided attention and effort. As a result, during my employment, I will not, without the company's express written consent, engage in any other employment or business that (i) directly competes with the current or future business of the Company; (ii) uses any Company information, equipment, supplies, facilities or materials; or (iii) otherwise conflicts with the Company's business interest or causes a disruption of its operations.

I. No Solicitation of Employees. During my employment with the Company and for one (1) year following the termination of my employment, I shall not, either directly or indirectly, solicit or in any way encourage any employee of the Company to leave his or her employment with the Company for any reason or to devote less than all of his or her efforts to the affairs of the Company, or to otherwise engage in any activity calculated to have such a result.

J. Non-Solicitation of Suppliers/Customers. During and after the termination of my employment with the Company, I will not directly or indirectly solicit or otherwise take away customers or suppliers of the Company if, in so doing, I use or disclose any trade secrets or proprietary or confidential information of the Company. I agree that the non-public names and addresses of the Company's customers and suppliers, and all other confidential information related to them, including their buying and selling habits and special needs, created or obtained by me during my employment, constitute trade secrets or proprietary or confidential information of the Company.

K. No Breach of Prior Obligations. I represent that my performance of all the terms of this Agreement will not breach any invention assignment, proprietary information, confidentiality or similar agreement with any former employer or other party. I have not entered into, and I agree I will not enter into, any agreement, either written or oral, in conflict herewith. I further represent that execution of this Agreement, my employment with the Company and my performance of my proposed duties to the Company in the development of its business will not violate any obligations I may have to my former employer. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents, materials, or intangibles of a former employer or third party that are not generally available to the public or have not been legally transferred to the Company.

4. At-Will Relationship. I understand that my employment by Synopsys is for an indefinite term and on an "at-will" basis. This means that either I or Synopsys may terminate the employment relationship at any time, with or without cause, and with or without prior notice. I understand this "at will" relationship may be changed only by a written agreement entered into specifically for that purpose and signed by either the Company's Chief Executive Officer or Chief Operating Officer. I also understand that other terms and conditions of my employment will be governed by various policies and programs of the Company, in writing and otherwise, and that those policies and programs may be changed from time to time by the Company in its discretion, but that the voluntary "at-will" nature of my employment shall not be affected or changed by any other employment policies or programs the Company may have, now or in the future.

5. Equitable Remedies. I also understand that any breach of this Agreement related to the ownership or improper use, disclosure or misappropriation of a Party's proprietary, confidential or trade secret information, or inventions (including but not limited to the Proprietary Information defined above) will cause irreparable harm to the injured Party for which damages would not be an adequate remedy, and, therefore, the injured Party will be

entitled to specific performance or other injunctive relief with respect thereto in addition to any other remedies and without any requirement to post bond.

6. No Expectation of Privacy in Electronic Resources or Workspaces. I acknowledge that I have no right of personal privacy with respect to the Company's electronic resources, which include but are not limited to all networking, computing, telephonic and other electronic systems to which I may be given access in connection with my employment, nor do I have any right of personal privacy in any workspace within the Company's facilities. This means that the Company can access, monitor or search any such electronic resource or workspace at any time, with or without notice.

7. Alternative Dispute Resolution. As a condition of my employment with the Company, the Parties agree to submit to mediation, and if mediation is unsuccessful, to binding arbitration, any dispute, claim or controversy arising out of, relating to or connected with my employment with the Company, except as to such matters set forth in Section 5 above.

   A. Mediation. In the event a dispute arises, it can be very productive to engage the services of a professional, trained mediator whose role is to facilitate a mutually satisfactory resolution of the dispute.

      1. Claims Subject to Mediation. The Parties agree to mediate any dispute arising from my employment with the Company except that neither party is required to mediate disputes over Company actions or omissions that do not amount to final and/or adverse employment actions that materially affect the terms, conditions, or privileges of employment, as defined by law. However, the parties may agree to mediate such disputes by mutual consent. The parties also agree to exclude claims for workers' compensation and state unemployment and/or disability insurance benefits.

      2. Notice of Mediation. Either Party may initiate the mediation by delivering a written notice to the other Party. Notice to the Company must be delivered to the Office of the General Counsel, 700 E. Middlefield Road, Mountain View, CA 94043.

      3. Selection of Neutral Mediator. A neutral mediator will be selected upon mutual agreement of the Parties. The Company will make available information from various mediators and mediation resources. The mediator will be a neutral, trained professional with experience in resolving disputes involving employment.

      4. Mediation Procedure. After selection of a mediator, the Parties will meet to attempt in good faith to resolve the dispute. The mediator's role is to serve as a neutral who facilitates the Parties efforts to reach a mutually agreeable resolution of the dispute. The mediator will not decide the merits of the dispute. The mediation will be confidential. Statements during mediation will be considered statements during settlement negotiations and will not be discoverable or admissible in any subsequent proceedings.

      5. Mediator's fees and expenses. The Company will pay the mediator's fees and expenses. Should either Party or both Parties retain legal counsel for the mediation, each Party will pay its, his or her own attorney's fees and expenses, except as such fees and expenses are included in a settlement agreement, or as part of an arbitration award to the prevailing Party.

   B. Arbitration. Arbitration is the referral of a dispute to an impartial arbitrator for a final and binding decision (instead of a court or jury). In the event mediation of a dispute between the Parties is unsuccessful, the Parties agree the dispute shall be handled through binding arbitration (hereinafter "Arbitration Agreement").

      1. Arbitrable Claims.

       (i) Except as provided in subsection (ii) below, the Parties understand and agree that, to the fullest extent permitted by law, this Arbitration Agreement applies to any and all claims arising out of, related to or connected with my employment with the Company and the termination thereof, including, but not limited to, claims of discrimination, harassment, unpaid wages, breach of contract (express or implied), breach of covenant of good faith and fair dealing, wrongful

termination in violation of public policy, any torts, claims for stock, stock options or other ownership interest in the Company, as well as claims based upon any federal, state or local ordinance, statute, regulation or constitutional provision, including, but not limited to, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act (ERISA), Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family and Medical Leave Act, the California Fair Employment and Housing Act, the California Family Rights Act, the California Labor Code, and any and all state or local laws prohibiting discrimination or regulating any terms or conditions of employment (the "Arbitrable Claims"). Arbitrable Claims also exclude claims for workers' compensation and state unemployment and/or disability insurance benefits and such claims will remain in the workers' compensation and/or state unemployment and disability insurance forums. The Arbitrator's award resulting from any arbitration under this paragraph shall be final and binding upon the Parties.

(ii) Arbitration shall be the exclusive method by which to resolve all Arbitrable Claims, except that, as provided under Section 5 above, pursuant to the Federal Arbitration Act, injunctive relief may be sought by either or both parties in a court of competent jurisdiction to maintain the status quo related to claims arising out of Sections 1 (Proprietary Information), 2 (Relationship of Trust), and 3 (Covenants) pending Alternative Dispute Resolution under this Section 7. The parties further agree that their respective obligations under Sections 1, 2 and 3 shall continue in full during the Alternative Dispute Resolution process provided, however, that either party may terminate the employment relationship at will per Section 4 above. The parties understand and agree that the Company has a legitimate commercial need to seek injunctive relief because of the business reality that a violation of the foregoing provisions may cause it irreparable harm. Further, the parties also understand and agree that I may have a legitimate need to seek injunctive relief, including but not limited to claims over the ownership of inventions, and/or actions by Synopsys that might affect my ability to obtain subsequent employment or to engage in a future competing business activities.

(iii) Any dispute over arbitrability of a claim shall be decided by the court.

(iv) **THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS.**

2. No Requirement to Exhaust Certain Administrative Remedies; No Restriction on Ability to File Certain Administrative Claims. In the case of a claim for employment discrimination or harassment, I understand that I am not required to file a complaint with any government agency (such as the California Department of Fair Employment and Housing or the federal Equal Employment Opportunity Commission), or otherwise exhaust an administrative remedy in order to initiate the arbitration of such a dispute under this Arbitration Agreement. This Arbitration Agreement, however, does not restrict my right to file certain administrative claims where, as a matter of law, the Parties may not restrict my ability to file such claims with an administrative agency (including, but not limited to, the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, or any other applicable federal or state agency charged with protecting the statutory rights of employees). The Parties further agree that, to the fullest extent permitted by law, arbitration shall remain the exclusive remedy for Arbitrable Claims that may be the subject of such administrative claims.

3. Requirement to Exhaust Benefit Plan Remedies before Arbitration of a Benefits Dispute. In the case of a claim for denial of benefits under any Company-administered benefits plan or other dispute concerning such benefits, benefit-plan claim filing and appeal procedures must be utilized and exhausted before any arbitration is commenced.

4. Notice of Arbitration. Either Party may refer an Arbitrable Claim to arbitration by delivering a written notice to the other Party. Notice to the Company must be delivered to the Office of the General Counsel, 700 E. Middlefield Road, Mountain View, CA 94043. Notice of arbitration must be submitted within the applicable time allowed by law for each alleged claim.

5. Governing Law; Administration; Venue. This Arbitration Agreement shall be governed by the Federal Arbitration Act. The Parties agree that a single arbitrator will conduct the arbitration

applying the then-current JAMS Employment Arbitration Rules and Procedures (or if JAMS cannot administer the arbitration, then the arbitrator will apply the JAMS rules to the extent practicable, or other rules or procedures that the parties mutually agree to use). All arbitration hearings shall be conducted in Santa Clara County, California (or the state in which I reside if it is not California, unless the Parties mutually agree to a different venue).

6. Costs. I understand and agree that I shall bear only those costs of arbitration that I would otherwise bear had I brought the claim in court and the Company shall bear those other costs of arbitration unique to the arbitral process.

7. Consent to Jurisdiction. The Parties consent to the jurisdiction of the California courts, or the courts of the state in which I reside if it is not California, to enforce any arbitration award and this Arbitration Agreement, and to enter judgment on any arbitration award. The Parties agree that the courts within the state in which I reside is a proper venue for such an enforcement action.

8. Heirs and Successors. This Agreement shall be binding upon me, my heirs, executors, assigns and administrators and shall inure to the benefit of the Company, its successors and assigns. The Company may assign any of its rights and obligations under this Agreement. I may not assign, whether voluntarily or by operation of law, any of my rights and obligations under this Agreement, except with the Company's prior written consent.

9. Waiver. I understand and agree that no waiver of any provision of this Agreement shall be of any force or effect unless made pursuant to a writing executed by the Company's General Counsel.

10. Severability. If for any reason a court of competent jurisdiction finds any provision of this Agreement, or portion thereof, to be unenforceable, that provision of the Agreement will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the remainder of this Agreement will continue in full force and effect.

11. Choice of Law. This Agreement shall be governed by and construed in accordance with the laws of the United States and the State of California.

12. Entire Agreement; Modification. This Agreement reflects the full and final agreement regarding its subject matter and there are no other agreements on these subjects. This Agreement supersedes any prior agreements, written or oral, regarding these subjects. This Agreement may be modified only by a written agreement signed by me and the General Counsel of the Company.

13. Acknowledgment of Voluntary Agreement. By signing below, I acknowledge that I have carefully read and understand this Agreement and enter into it voluntarily and free from any duress or coercion.

14. Effective Date. This Agreement shall be effective as of the first day of my employment by the Company.

Employee Signature

Print Name DEEPAK SABHARWAL

Date 9/8/10

On behalf of the Company:

Signature

Print Name alicia Muniz

Title HR admin

Date 9/8/10

## APPENDIX A
## TO
## AGREEMENT

### Notice for Illinois Employees

In accordance with Section 1060/2(3) of the Illinois Code, the foregoing assignment provisions in this Agreement do not apply to an invention for which no equipment, supplies, facility, or trade secret information of the Company was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the Company.

### Notice for Minnesota Employees

In accordance with Section 181.78(3) of the Minnesota Statute, the foregoing assignment provisions in this Agreement do not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on the employee's own time, and (1) which does not relate (a) directly to the business of the Company or (b) to the Company's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by the employee for the Company.

### Notice for Kansas and Washington State Employees

In accordance with Section 44-130 of the Kansas Statute and Section 49.44.140(3) of the Washington State Code, the foregoing assignment provisions in this Agreement do not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on the employee's own time, unless (a) the invention relates (i) directly to the business of the Company, or (ii) to the Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by the employee for the Company.

**APPENDIX B**
**TO**
**AGREEMENT**

**LIST OF PRIOR INVENTIONS AND/OR ORIGINAL WORKS OF AUTHORSHIP**

| | Title | Date | Identifying Number and Brief Description |
|---|---|---|---|
| ① | SYSTEM & Method For Memory Characterization | 5/18/04 | 6, 738, 953   B1 |
| ② | Semiconductor Memory with Multiple Timing Loops | 5/30/04 | 6, 711, 092 |
| ③ | Word-line Based Comm-Biasing Scheme for Reducing Memory Cell Leakage | 6/13/06 | 7, 061, 794   B1 |
| ④ | Multi-port Memory Utilizing An Array of Single Port Memory Cells | | 7, 251, 186 |
| ⑤ | System & Method for Redundancy Increasing Exploration Performance in a Compilable Read Only memory | | 6, 587, 364   B1 |

_____ No Inventions or Original Works of Authorship

_____ Additional Sheets Attached